(No. 12617.—Reversed and remanded.)
EDWIN F. ABBOTT, Appellant, *vs.* WILLIAM T. CHURCH
*et al.* Appellees.

*Opinion filed April 15, 1919—Rehearing denied June 6, 1919.*

1. WILLS—*evidence in the probate court tending to show who drew will is admissible in will contest on issue of undue influence.* Where a bill is filed to set aside a will on the sole ground that it was executed through undue influence of the chief beneficiary, the testimony of the attesting witnesses in the probate court tending to show the chief beneficiary drew the will is admissible where the evidence was not contradicted or objected to in the probate court.

2. SAME—*evidence that chief beneficiary drew will establishes prima facie proof of undue influence.* Where a will is contested on the ground of undue influence, evidence that the chief beneficiary drew the will establishes *prima facie* that the execution of the will was the result of undue influence exercised by that beneficiary, and, if unexplained, will justify a verdict against the will.

3. SAME—*when confidential or fiduciary relation arises.* Any relation existing between parties to a transaction wherein one of them is in duty bound to act with the utmost good faith for the benefit of the other is a confidential or fiduciary relation, and such a relation arises whenever a continuous trust is reposed by one person in the skill or integrity of another.

4. SAME—*letters of testator are admissible only for purpose of sustaining will.* In a will contest case, letters of the testator are not admissible for the purpose of destroying or invalidating his will but may sometimes be admissible to sustain it.

5. EVIDENCE—*what is meant by word "think," when used by a witness.* The word "think" means "believe," and when a witness prefaces his testimony with "I think," he is to be taken as testifying to what he remembers.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

EDWIN F. ABBOTT, *pro se,* and C. HELMER JOHNSON, for appellant.

JAMES H. WILKERSON, for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

This appeal is prosecuted by Edwin F. Abbott, complainant below in a bill to set aside the will of his brother, George B. Abbott, from a decree dismissing the bill and sustaining the will of the testator. The only ground upon which appellant relied in the court below and is relying on here is that the execution of the will was procured through the undue influence of Frank L. Shepard, who was made a beneficiary and one of the executors and trustees in the will.

The testator left property valued at approximately $16,-000. One thousand dollars of his property was personal property and the remainder was real estate. By his will he bequeathed to Frank L. Shepard all of his Sons of Veterans and Masonic badges, jewels, decorations and medals, all pictures, books, clothes, papers, jewelry, furniture and personal effects. The remainder of the estate, real, personal and mixed, he devised and bequeathed to his executors, William T. Church and Frank L. Shepard, with directions to convert the same into money within two years after his death. He then directed (1) that they pay to George Abbott Buckley the sum of $500; (2) that they pay to his brother, Edwin F. Abbott, "one-fourth of the remainder of my said estate, less the sum of $2000;" (3) that they then divide the residue into three equal parts, and that they pay one such part each to Mrs. Margaret Abbott Walker, William T. Church and Frank L. Shepard, and in case of the death of any one or more of said three persons, then in such case her, his or their share should pass to the heirs-at-law of such deceased person or persons. Neither executor was required to give any bond or security as executor. The will was executed April 8, 1911.

The bill alleged, in substance, that the testator at the time of making his will was ill and by reason of domestic troubles and of his illness was easily influenced; that the

will was prepared by William T. Church and Frank L. Shepard and under their advice and direction; that they were practicing law as partners in Chicago at the time the will was executed and were the legal and confidential advisers of the testator, and that they took advantage of the confidence he reposed in them and by undue influence procured the alleged will to be executed and whereby they were made the principal beneficiaries thereunder. All charges of undue influence were denied in the answer of appellees.

It is diclosed by the evidence that at the time the will of the testator was executed he was fifty-five years of age and was possessed of a sound mind and of a strong mentality. There is no evidence of his being in an enfeebled condition, either mentally or physically. Six years prior to the execution of his will he was divorced from his wife, but the record does not show that that incident affected him in any way whatever. He was a practicing physician, and in 1888 was elected commander-in-chief of the Sons of Veterans and served two years. He afterwards spent a few years in Honduras and returned to the United States in 1897. In 1898 Frank L. Shepard was elected commander-in-chief of the Sons of Veterans and the testator was made his national secretary. William T. Church was at this time commander of the Illinois Division of the Sons of Veterans. The three had offices in the Tacoma building, and being engaged in the same work in said organization their association ripened into very strong friendships, which continued until the death of the testator, June 14, 1917. In 1902 Shepard and Church became partners in the law firm of Barker, Church & Shepard. Church and Shepard became partners largely through the influence and persuasion of the testator, who thereafter had a desk in their office and used the office as it suited his convenience, received his mail there, kept an account with them and deposited with them his rents and sometimes his salary, and this account and deposit continued with them up to his death. They

rendered a great deal of service for him until the time of his death,—kept his accounts, took charge of his money, received his rents, took care of his property, superintended the re-building of his houses in 1914 and made contracts and paid the bills. Shepard was his attorney in 1905 in the divorce proceedings. One Haynes represented him in a suit in the United States court, Church and Shepard being therein consulted as friends but not as lawyers, as Church in his testimony put it. They helped him secure his bond in that suit. Shepard and Church represented him as attorneys in 1915 before the board of review. During a part of the time, in his absence from the State, they looked after all of his personal affairs, paid his lodge dues, insurance premiums, and kept his private papers in a tin box in their, vault. His moneys received by them were deposited in the partnership account in a bank. Sometimes he had large sums thus deposited in their account, at other times it would all be checked out by the testator, but he drew checks whenever he wanted money, whether he had much, little or none left in his account, and all such checks were paid by them. There is no dispute in the evidence, most of it being given by Church, who was called as a witness for the appellant. Church testified that the first time he knew anything about the will or its contents was when it was opened after the death of Dr. Abbott, and that he had nothing to do whatever, by suggestion or otherwise, in its preparation.

On the introduction of the testimony taken in the probate court in the proceeding to probate the will, and which was offered by appellant, the appellees objected to the evidence contained in the following examination of the witness R. W. Lewis, one of the witnesses to the will, to-wit:

Q. "Where was this will executed?

A. "In our office,—the office of Church, Shepard & Day. The firm then was Barker, Church & Shepard, at that time.

Q. "Who drew the will; do you know?

A. "Well, I don't remember positively, but judging from the form of that certificate I think Frank L. Shepard.

Q. "You did not draw it?

A. "No, I don't think I did. I may have, but I think not."

The same character of evidence offered by appellant, found in the testimony of Anna L. Ekval before the probate court, was also objected to by appellees, the testimony objected to being the following:

Q. "Where was this will signed?

A. "Why, over at the attorney's office,—Church, Shepard & Day.

Q. "How did you happen to be in their office at the time?

A. "I am employed there.

Q. "Still employed there?

A. "Yes, sir.

Q. "How long had you known Mr. Abbott before this time?

A. "Oh, I had known him about fifteen years.

Q. "Do you know who drew this will?

A. "Why, I think Mr. Shepard,—Frank L. Shepard.

Q. "He is one of your employers?

A. "Yes."

The court sustained the objections of appellees aforesaid and struck out of the certificate of evidence all of said questions and answers of the attesting witnesses. There was no other testimony in the certificate of evidence before the probate court bearing upon the question as to where the will was signed and by whom it was prepared. These two witnesses were stenographers and employees of Church and Shepard at the time the will was drawn and executed, and Lewis was an attorney at law and in their employ at the time of the trial in the superior court. They were both called to testify on behalf of appellant. In his cross-examination Lewis testified that he did not remember whether or

not he did the mechanical part of typewriting the will but thought he did not; that he did not know positively who drew the will but based his answer in the probate court that Shepard drew the will, on the form of the certificate. Miss Ekval was not examined in the superior court touching the question as to where the will was drawn and executed and by whom prepared. There is no other evidence in the record on the question whether or not Shepard did prepare the will for the testator, except the evidence before the probate court and which was stricken from the certificate as aforesaid. The testimony of both attesting witnesses does show that the will was duly signed and properly witnessed and that they witnessed the signing of the will at the request of the deceased, and that they do not think Shepard was present when the will was so signed by the testator and attested. At the close of all the evidence the court excluded the evidence and directed the jury to return a verdict for the proponents of the will, appellees.

It is first contended by appellant that the court erred in striking from the certificate of the evidence before the probate court the questions and answers of the attesting witnesses, and in this contention he is right. This evidence was not further explained or contradicted in the probate court and no objection was made to it in the probate court. It was proper evidence and the certificate should have been admitted as a whole. (*Baker* v. *Baker,* 202 Ill. 595.) Had this evidence not been excluded, the positive testimony of Miss Ekval would have been in answer to a direct question who prepared the will, "I think Mr. Frank L. Shepard." Her answer was not further qualified or explained in the probate court, although when re-called as a witness in the superior court she did state that she did not positively know who did the work. Lewis' testimony was positive to the effect that Shepard drew the will, and he testified both in the probate court and in the superior court that he based his testimony upon the form of the attestation clause. The

attestation clause is substantially in the usual form, yet it contains language somewhat unusual and sufficient to characterize it. It reads thus: "The above instrument was subscribed by the said George B. Abbott in our presence and acknowledged by him to each of us, and he at the same time declared the above instrument so subscribed to be his last will and testament; and we, at his request, have signed our names as witnesses hereto in his presence and in the presence of each other and written opposite our names our respective places of residence, believing the said George B. Abbott to be of sound mind and memory, this 8th day of April, A. D. 1911." "Think" means "believe," and when a witness prefaces his testimony with "I think," he is to be taken as testifying to what he remembers. (8 Words and Phrases, 6959; *Galveston, Harrisburg and San Antonio Railway Co.* v. *Parrish,* (Tex.) 43 S. W. Rep. 536.) The witness Lewis might have been able to have given a number of good reasons for thinking Shepard wrote the certificate or drew the will if he had been further questioned.

All the testimony offered and excluded by the court from the jury tended to prove that a fiduciary relation existed between testator and the devisee Frank L. Shepard, who received a substantial benefit, and, in fact, the chief benefit, under the will, and it further tended to show that the will was prepared and drawn by Shepard. This proof established *prima facie* that the execution of the will was the result of undue influence exercised by that beneficiary, and, standing alone and undisputed, would entitle appellant to a verdict. (*Weston* v. *Teufel,* 213 Ill. 291; *Teter* v. *Spooner,* 279 id. 39.) Any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other is a confidential or fiduciary relation. Such a relation arises whenever a continuous trust is reposed by one person in the skill or integrity of another. (12 Corpus Juris, 421; *Thomas* v. *Whitney,* 186 Ill. 225.) While it

288 – 7

may be said that the evidence of appellees in this record tends somewhat to rebut the presumption of undue influ- . ence, considering all the relevant testimony that should be in the record, still it was error in the court to exclude all the evidence and to direct a verdict. It was appellant's right to have the case submitted to a jury. The vital question in this case was whether or not all the legitimate and proper evidence offered made a *prima facie* case, because if it did not, the simple error in excluding the evidence in the transcript of the evidence before the probate court would not necessarily be fatal error. It was reversible error to exclude all the evidence and to direct a verdict.

Two letters of the deceased written to appellant, one in· 1907 and the other in 1909, were offered by appellant merely for the purpose of proving that a friendly relation existed between them at those times. Both letters were in relation to a patent on a safety vault lock-device but portions of the letters were concerning family matters. The letters do disclose that a rather close and affectionate relation existed between the two brothers, but they have no relation whatever with any matters connected with this suit and are rather too remote proof of friendly relationship, even if that were a contested issue in this case. The general rule is that letters of a testator are not admissible for the purpose of destroying or invalidating his will but may sometimes be admissible for the purpose of sustaining his will. (*Crumbaugh* v. *Owen*, 238 Ill. 497.) It was not error in the court to exclude those letters in this case.

For the errors indicated the decree of the superior court is reversed and the cause remanded.

*Reversed and remanded.*