(No. 29698.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER W. HERRING *et al.*, Plaintiffs in Error.

*Opinion filed January 22, 1947—Rehearing denied March 17, 1947.*

GEORGE W. SPRENGER, of Peoria, for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, and LACHLAN CRISSEY, State's Attorney, of Lewistown, (LAWRENCE B. McMUNN, of Lewistown, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error seek reversal of a judgment entered upon the verdict of a jury in the circuit court of Fulton

county, finding them guilty of larceny in manner and form as charged in the indictment, and the value of the property stolen to be $65. The indictment consisted of four counts. The first three charged larceny of a boat as bailees, and the fourth count charged larceny of the boat.

The undisputed facts are that on August 4, 1945, plaintiffs in error drove an automobile to the river bank at Liverpool, Illinois, took therefrom a grip containing their clothes, and there rented a rowboat from the complaining witness, George F. Harris, Sr., paying him $1.50 rent therefor. The grip and some fishing tackle were placed in the boat. Plaintiffs in error did not return the boat. An indictment was returned September 25, 1945, and a *capias* was issued. On October 13, 1945, plaintiffs in error were arrested in Marshalltown, Iowa, brought to Lewistown, in Fulton county, and lodged in the county jail. They testified they rented the boat in the afternoon of August 4, 1945, from Harris; that Harris asked them when they would return the boat and that they did not put a definite time on it; that they rowed up the Illinois river to a point between Liverpool and Banner, in that county, where they left the boat. This was at 10 or 11 o'clock that night. They testified that they then walked to Banner, caught a truck to Peoria, and then a bus to Chicago. From there they went to Deadwood, South Dakota, then to Sturgess, then to Kimball and then to Marshalltown, Iowa, where they were arrested on October 13, 1945, and were brought back to Lewistown by the sheriff of Fulton county. They further testified they intended, at the time they got the boat, to return it, but changed their minds between Liverpool and the place where they left it. They further testified that one of them, Walter W. Herring, told Harris they would leave the automobile as security. This was denied by Harris.

Over objections, signed statements of plaintiffs in error were admitted in evidence, in which they stated they packed

their clothes in a grip, went to the river, rented a boat from Harris and had no intention of returning, and when they got out of the boat, about eight miles above Liverpool, they pushed it out in the river.

Ray Fielding, son-in-law of plaintiff in error Walter W. Herring, testified he, on January 7, 1946, paid complaining witness Harris $75 for the release of the automobile. The release signed by Harris, in evidence as plaintiffs in error's exhibit 1, recites: "Date Jan. 7, 1946. I released the car to Ray Fielding for the sum of $75. He paid in full for the boat. Signed George F. Harris, Sr."

Two witnesses for the People testified that a 12 to 14 ft. single bottom boat, three years old, was worth from $45 to $100. The jury returned a verdict finding plaintiffs in error guilty of larceny in manner and form as charged in the indictment, the value of the property stolen to be $65, and finding the ages of plaintiffs in error. Written motions for a new trial and in arrest of judgment were overruled and judgment entered. Plaintiffs in error were sentenced to the Illinois State Penitentiary for a period of from one to ten years.

Plaintiffs in error urge that their constitutional and statutory rights were violated in obtaining the alleged confessions. They also contend it was error to admit evidence as to the value of the boat, and that without such evidence there was no evidence of the value of the property alleged to have been stolen. They also argue that there was no proof of bailment. Their contention that their constitutional rights were violated in obtaining the alleged confessions is based upon the contention that under section 4 of division XII of the Criminal Code, the sheriff and State's Attorney had no right or authority to question and procure confessions or statements from plaintiffs in error prior to their being brought before the court under the process under which they were held. That section reads as follows: "If the process is returnable forthwith the accused

shall be immediately brought into court, when he shall either be committed, bailed or tried, as the court may direct; but if the court shall not be in session when the officer makes the arrest so that the accused may be let to bail in open court, such officer may let him to bail conditional for his appearance on the day to which the court stands adjourned, if sufficient bail is offered." (Ill. Rev. Stat. 1945, chap. 38, par. 725.) This contention is based on the undisputed fact that plaintiffs in error, when brought to the county jail under authority of the *capias* issued by the court, and before they were taken before the court or had furnished bail, were interrogated by the sheriff and State's Attorney, and their statements, in evidence, were taken and signed by them. This they say was in violation of their statutory and constitutional rights. In support thereof they rely upon *McNabb* v. *United States,* 318 U.S. 332, 87 L.ed. 819, contending that a very similar question was there raised and decided. The facts of that case were in nowise similar to the facts in the case before us. In that case the three McNabb brothers, none of whom went beyond the fourth grade in school, and who had never been farther than 21 miles from their home in the Tennessee mountains, were arrested on suspicion of firing two shots from a gun which killed one and wounded another United States internal revenue agent. No warrant had been issued for their arrest, and for two or three days prior to taking them before a United States commissioner or before a United States judge, to determine the justification for their detention, they were, without the benefit of counsel, friends or relatives, questioned and requestioned, and their statements procured. The court held that it was not necessary to decide the constitutional question presented, but only to determine whether the arresting officers had assumed functions which Congress had explicitly denied them. The Act of Congress under consideration in that case provides: "It shall be the duty of the marshal, his deputy, or other officer,

who may arrest a person charged with any crime or offense, to take the defendant before the nearest United States Commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail for trial." The court held their statements inadmissible for the reason that the circumstances in which the statements admitted in evidence against the petitioners were secured revealed a plain disregard of the duty enjoined by Congress upon Federal law officers.

*Anderson* v. *United States*, 318 U.S. 350, 87 L. ed. 829, also relied upon, involved an arrest without warrant and confessions obtained during a period of six days without benefit of seeing friends, relatives or counsel, in violation of a State law which required that the accused be forthwith taken before a magistrate.

From the foregoing it is plainly seen that the facts in the *McNabb* and *Anderson cases* are in nowise similar to those in this case. In both of those cases the conviction rested upon the evidence procured through illegal means. In the instant case the statements of plaintiffs in error were not taken while they were in custody on suspicion or complaint, but they were in custody under authority of a *capias* issued out of the circuit court for their arrest under an indictment returned by the grand jury. The statements were not different, in any material way, from their evidence given on the trial, and it may well be doubted whether the signed statements in any way influenced the jury in its verdict. Under the facts in this record it was not error to admit the statements.

It is next insisted that there was no proper foundation laid for the admission of the testimony of two opinion witnesses as to value of the property taken. One J. W. Phillip testified he had owned fifteen or twenty boats at different times; had bought, traded for and sold boats, and had seen 12 to 15 ft. boats at Harris's place. On objection to the form of the question which asked the wit-

ness if he had an opinion as to the value of a rowboat 12 to 15 feet long the court said, "Fix the time, when." The question then was: "In Liverpool, Illinois, August 1945." No further objection was interposed and the witness answered, placing the value at from $80 to $100. A motion to strike, on the ground that there was no proper foundation for the opinion and that there was no proof that it was the rowboat in question, was overruled. One Clifton Warren testified that he was a boatbuilder, had owned more than 100 boats, was well acquainted with the price thereof, and had been at Harris's place of business and probably had seen a boat 12 to 14 ft. long painted green. He testified that no boats were being built during the war because of inability to get material, and that there were hardly any boats changing hands at that time. His evidence showed that at that time and place there was no market for boats of this character. He was asked "What in your opinion would be the fair value in Liverpool, Illinois, last summer of a boat from 12 to 14 feet long, a row boat about 3 years old?" Objection to the question was overruled. The answer was "$45 to $50." A motion to strike the testimony of this witness was denied. George Harris, the complaining witness, testified that the value of the boat involved here was "around $100." The jury fixed the value of the boat at $65.

Where the article stolen has a market value at the time and place where stolen, it is competent to prove the fair cash market value of such property, but it is not competent to prove such value at a distant point where a market is maintained. (*People* v. *Palmer,* 351 Ill. 319.) Where there is proof, as here, that at the time and place where the boat was stolen, none were being made and few, if any, were changing hands, it is evident that there was no market for boats at that time and place and, in such a case, anyone who has some knowledge of the value of such article at the time and place where it was stolen may give his

opinion of such value. (*McKee* v. *Trisler*, 311 Ill. 536; *People* v. *Palmer*, 351 Ill. 319.) The evidence of Warren was competent. Its weight and credibility were for the jury. There was no contradiction of his testimony, and it satisfied the rule requiring proof beyond a reasonable doubt in criminal cases. In *People* v. *Fognini*, 374 Ill. 161, the charge was larceny of two suits of clothes. Witnesses testified concerning the value of the articles stolen. Their testimony was in substance the same. One testified he thought the suits had cost $18.50 each and were worth $20. There was no proof that there was no market for such articles at that time and place and it was held that the proof of value was not competent. That case is to be distinguished from a case where, as here, there is proof that no market existed at the time and place of the theft.

It is next insisted there was no proof of a bailment. The defense was that plaintiffs in error left the automobile as security for the boat and that the payment of $75 to release the automobile was in full payment for the boat. The evidence is conflicting on the issue of bailment. It was the province of the jury to decide that question. Payment to Harris did not excuse the theft. It was clearly proved by the testimony that the accused rented the boat with no intention of returning it. It is true plaintiff in error Walter W. Herring testified he did not make up his mind not to return the boat until after they left the boat landing at Liverpool, but the jury was justified in believing that they rented the boat with the fixed intention of not returning it.

There is no error in the record requiring a reversal and the judgment is affirmed.

*Judgment affirmed.*