Gary Charles
MIDDLEBROOK, Appellant,

v.

The STATE of Texas, State.

No. 2–89–307–CR.

Court of Appeals of Texas,
Fort Worth.

Dec. 12, 1990.

Rehearing Overruled Jan. 15, 1991.

Discretionary Review Refused
May 8, 1991.

R. Maureen Tolbert, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Christian Harrison, Asst., Fort Worth, for appellee.

Before FARRIS, MEYERS and DAY, JJ.

## OPINION

DAY, Justice.

Gary Charles Middlebrook appeals his conviction for the offense of unauthorized use of a motor vehicle. *See* TEX.PENAL CODE ANN. sec. 31.07 (Vernon 1989).

We affirm.

Middlebrook's second point of error alleges that the trial court erred in overruling his challenge for cause of a venireman and in denying his request for an extra peremptory strike due to the trial court's alleged erroneous overruling of the challenge for cause.

Rulings on a challenge for cause to a prospective juror are the functions of

the trial court, and when bias or prejudice is not established as a matter of law, the trial court has discretion to determine whether bias or prejudice actually exists to such a degree that the prospective juror is disqualified and that the challenge for cause should be sustained. *Little v. State,* 758 S.W.2d 551, 556 (Tex.Crim.App.1988) (quoting *Anderson v. State,* 633 S.W.2d 851, 853–54 (Tex.Crim.App.1982)); *Phillips v. State,* 656 S.W.2d 219, 220 (Tex.App.— Fort Worth 1983, no pet.). Middlebrook claims that venireman Bunker's answers on voir dire reflected her bias toward the testimony of police officers. However, a subsequent voir dire exchange between Middlebrook's counsel and venireman Bunker revealed that Bunker believed that "most people would not" lie under oath and that she did not distinguish between the credibility of police officers and lay witnesses. We cannot find from the record that the trial judge erroneously overruled Middlebrook's challenge for cause of venireman Bunker.

■ Even had we held that the court's overruling of Middlebrook's challenge for cause of venireman Bunker was erroneous, we find that such error was harmless. Harm occurs from a denial of a challenge for cause of a prospective juror only if the challenging party uses all of its peremptory challenges and is thereby prevented from striking other objectionable jurors because no additional peremptory challenges remain. *See Green v. State,* 764 S.W.2d 242, 246 (Tex.Crim.App.1989) (defendant must establish that he was tried by a jury to which he had a ¹egitimate objection); *Demouchette v. State,* 731 S.W.2d 75, 78 (Tex.Crim.App.1986), *cert. denied,* 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987) (defendant is harmed only if he uses a peremptory strike to remove venireperson and thereafter *suffers detriment* from a loss of the strike).

■ Middlebrook's request for an additional peremptory strike and the court's response thereto follow:

MR. MOLINA: If I may, Judge, we do move for an extra peremptory challenge based on the fact that the Court denied our challenge for cause on Ms. Bunker, and we used one of our peremptory challenges on her. And she was disqualified under our challenge for cause because she said she could not answer the question we posed about the credibility of witnesses dealing with police officers. And I believe that—Did Mr. Riley make it on? If he made it on, he is the objectionable juror who made it on.

THE COURT: Tell me who *your* objectionable juror is. [Emphasis added.]

MR. MOLINA: I have to know who is on there. I can't say.

THE COURT: You tell me who *your* objectionable juror [is] you would strike if you had *your* extra strike. [Emphasis added.]

MR. MOLINA: There is a list of jurors I would use it on, but it would commence with Mr. Riley, if he made it on board. If he didn't make it on board, I wouldn't. But there are others.

THE COURT: Who do you need *your* strike for? [Emphasis added.]

MR. MOLINA: I would use it on Number Twenty–Nine, Mr. Riley; Number Nineteen, Mr. Kotapish; Number Eleven, Allen Ray Steward.

THE COURT: Are you going to use that one strike? You are going to get a lot of mileage on that strike.

MR. MOLINA: That's the order in which I would strike, if I were granted an extra.

THE COURT: That's the order in which you would strike if you were granted an extra strike? Your request for an extra strike is denied, but be relieved, J.R. Mr. Riley didn't make it, and Steward—

MR. MOLINA: Did he make it?

THE COURT: He didn't make it, either.

MR. MOLINA: How about Mr. Kotapish?

THE COURT: He made it, but you wouldn't have gotten to him with your one strike. *You can't strike after you see their strikes.* [Emphasis added.]

MR. MOLINA: No, I challenged if I had an extra strike, this is the people I would strike. So Mr. Kotapish is the objectionable juror I would strike if you granted my extra peremptory challenge because of the Court's denial of our challenge for cause on Ms. Bunker, not Archie Bunker, but Ms. Bunker.

THE COURT: Is everybody ready for the Jury?

MR. MOLINA: Note our exception to the Court's ruling. Is it overruled?

THE COURT: I overruled it a long time ago.

MR. MOLINA: Note our exception.

THE COURT: So noted.

The record reflects that had the trial court granted Middlebrook an additional peremptory strike, he would have exercised it on a prospective juror who was already stricken by the State. Under these facts, the objected to and stricken juror would have been subject to a dual strike. Thus, Middlebrook is unable to demonstrate that he was harmed by the denial of an additional peremptory challenge. To enable Middlebrook's counsel to gain prior knowledge of the State's strikes before exercising an additional peremptory strike, if granted, would undermine the State's ability to privately strike undesirable jurors who were not previously stricken for cause or subject to a peremptory challenge. This we cannot sanction. Because the objected to juror was never empaneled, no harm occurred. Middlebrook's second point of error is overruled.

In his third point of error, Middlebrook asserts that the trial court erred in admitting his statement to a police officer because the officer's testimony failed to demonstrate he had adequate personal knowledge of the statement. We disagree.

When asked to testify as to the substance of Middlebrook's res gestae statement shortly after his arrest, Officer Goode offered the following responses:

I can't give you an exact quote, but he said something to the effect ...;

I can't give you a quote ...;

I can't give you an exact quote. It's just what I feel he said ...;

He said something to the effect of ... (in two different instances); and

I remember what he was meaning to say....

In examining the requirements of knowledge from observation for admission of evidence, commentators state:

While the law is exacting in demanding firsthand observation, it is not so impractical as to insist upon preciseness of attention by the witness in observing, or certainly of recollection in recounting the facts. Accordingly, when a witness uses such expressions as "I think," "My impression is," or "In my opinion," this will be no ground of objection if it appears that he merely speaks from an inattentive observation, or an unsure memory, though it will if the expressions are found to mean that he speaks from conjecture or from hearsay.

C. McCormick, *McCormick on Evidence* sec. 10 (E. Cleary 3d. ed. 1984). Additionally, several courts have held that a witness's inability to recall the exact wording of another's statement is not fatal. *See U.S. v. Cox*, 633 F.2d 871, 875 (9th Cir.1980), *cert. denied*, 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981) (the witness's testimony that it was her impression when she and the defendant were done talking that he was involved in the offense was admissible since it was "rationally based on [her] perception ... and helpful either to an understanding of the testimony of the witness on the stand or to the determination of a fact in issue."); *Auerbach v. U.S.*, 136 F.2d 882, 885 (6th Cir.1943) (a witness's answer "should hardly be rejected because the witness is not positive ... beyond all doubt or because through excessive caution he qualified his answers by such expressions as 'I think' or 'I believe.'"); *State v. Dixon*, 420 S.W.2d 267, 270 (Mo.1967) (the fact that the witness used the term "I think" in response to a question would not render her testimony inadmissible); *Covey v. State*, 334 S.W.2d 648, 651 (Ark.1960) ("witnesses are not required to give their testimony with absolute positiveness. A witness who is not positive may make a statement of a fact to the best of his recollection or belief

and his testimony should not be excluded because he uses 'it is my impression', [sic] 'I think', or a similar expression ['I don't know his exact words, but it was something to that effect'] where he means that he is testifying to the best of his recollection or an indistinct remembrance of facts within his personal knowledge."); *People v. Palmer*, 351 Ill. 319, 184 N.E. 205, 207 (1932) (when a witness begins her statement with the phrase "I believe," her testimony is competent if it is premised on "practical experience [or] special knowledge ... so that she could testify to facts known to her from experience."); *Lovejoy v. Howe*, 55 Minn. 353, 57 N.W. 57, 58 (1893) ("A witness cannot be permitted to state what the impression left in his mind by a conversation is, unless he swears to such impression as matter of recollection, and not of inference.").

 We adopt the rulings of these courts and conclude it would be impractical to require a witness to recall verbatim a conversation between himself and another. The Rules provide that the witness need only have personal knowledge of the matter at issue. *See* TEX.R.CRIM.EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself."). We cannot conclude that Officer Goode spoke from "conjecture or hearsay." The record reflects that Officer Goode had personal knowledge of Middlebrook's statements made prior to and after his arrest.

Additionally, the credibility of Officer Goode's statement goes to the weight and not the admissibility of his testimony. The jury exclusively judges the credibility of the witnesses, assigns the weight to be given to their testimony, and resolves any conflicts or inconsistencies in evidence. We cannot conclude that the jury's finding of guilt was based on erroneously admitted testimony. Middlebrook's third point of error is overruled.

Middlebrook's first point of error contends that the trial court erred in denying his motion for a directed verdict because there was insufficient evidence to support his conviction for unauthorized use of a motor vehicle. We disagree.

 Much of the State's case is based on circumstantial evidence. To sustain a conviction based on circumstantial evidence, the circumstances must exclude every *reasonable* hypothesis except that the act was committed by defendant. *Johnson v. State*, 673 S.W.2d 190, 195 (Tex.Crim. App.1984); *Carlsen v. State*, 654 S.W.2d 444, 447 (Tex.Crim.App.1983). Rather, the State need only demonstrate that the hypothesis is a reasonable one consistent with the circumstances and facts proved. *Id.* Curiously, Middlebrook apparently contends that the existence of circumstantial evidence requires the State to sustain a different, and higher, burden of proof regarding the sufficiency of evidence than that normally afforded a criminal case. This assertion is unsupported in the law. Proof by circumstantial evidence is not subject to a more rigorous standard than is proof by direct testimonial evidence. *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim.App.1989); *Olivarri v. State*, 773 S.W.2d 792, 794 (Tex.App.—San Antonio 1989, no pet.); *see also Douthit v. State*, 739 S.W.2d 94, 95 (Tex.App.—San Antonio 1987, no pet.) (the test in determining the sufficiency of the evidence to support a criminal conviction is the same in both direct and circumstantial evidence cases). As in all other criminal proceedings, the State bears the burden of proving the defendant's guilt beyond a reasonable doubt. The State is not required to prove the defendant's guilt to a moral certainty. *McGee*, 774 S.W.2d at 238 (quoting *Carlsen*, 654 S.W.2d at 447).

 While we agree this is a circumstantial evidence case, we also conclude that the State's case is not based *solely* on circumstantial evidence. Therefore, this case must be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Olivarri*, 773 S.W.2d at 794 (quoting *Johnson*, 673

S.W.2d at 195). Summarizing the evidence, we find the following:

(1) the owner of a vehicle reported her car was stolen;

(2) Officer Goode located the stolen car on a parking lot with no one in or around the car;

(3) Officer Manning began surveilling the car and shortly thereafter (10–15 minutes) saw Middlebrook approach the car, look inside the car, and look both ways down the street;

(4) no other individual was near the car at this time;

(5) three individuals approached Manning's surveillance point;

(6) Manning ducked behind a nearby building;

(7) Manning emerged from behind the building approximately twenty to thirty seconds later and discovered Middlebrook and the car gone;

(8) Officer Carruthers saw the vehicle turning a corner and parking in a second parking lot;

(9) fifteen seconds later Manning ran around the building and saw Middlebrook behind the driver's wheel of the stolen car;

(10) an individual named "Spanky" was leaning against the window of the car and talking to Middlebrook;

(11) Carruthers saw Manning arrive at the parking lot where the car was parked;

(12) Carruthers saw Middlebrook exiting the car;

(13) Middlebrook attempted to run but was trapped by other converging officers;

(14) Middlebrook was arrested, given his *Miranda* warnings, and *told Manning that he did not steal the car, but only wanted the tires;*

(15) while being transported by Goode, Middlebrook *said that he did not do anything, that he just "drove* [the vehicle] *around here."*

The State correctly points out that the evidence in this case is not *merely* circumstantial. Since much of the evidence *is* circumstantial, we are mindful that each

fact need not point directly and independently to Middlebrook's guilt, as the cumulative effect of all the incriminating facts may be sufficient to support the evidence and warrant a conviction. *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App. 1987); *Carlsen,* 654 S.W.2d at 447. Testimonial evidence regarding what the officers saw and heard was offered at Middlebrook's trial. We have previously held that Officer Goode's statement was properly admitted. Middlebrook's statements were admissions by a party-opponent, as defined by Rule 801(e)(2) of the Rules of Criminal Evidence, and were therefore admissible. *See* TEX.R.CRIM.EVID. 801 (statement is offered against a party and is his own statement in either his individual or representative capacity). Additionally, Middlebrook's statements were admissible since they were spontaneous utterances, or "res gestae," related to his arrest. We find there was sufficient evidence, circumstantial or otherwise, to support Middlebrook's conviction. Point of error one is overruled.

Middlebrook's fourth point of error asserts the trial court erred in overruling his objection that the State misstated the law during voir dire to such a degree that the statement eradicated the State's burden of proof on an essential element of the case. We disagree.

Middlebrook contests a comment made by the State during voir dire, as follows:

[I]f someone gets in your car and drives it around the block without your consent, they have committed a third degree felony. . . .

Argument which misstates the law or is contrary to the court's charge is improper. *Hubbard v. State,* 770 S.W.2d 31, 44 (Tex. App.—Dallas 1989, pet. ref'd) (quoting *Davis v. State,* 506 S.W.2d 909, 911 (Tex. Crim.App.1974)); *Whiting v. State,* 755 S.W.2d 936, 943 (Tex.App.—San Antonio 1988, no pet.) (quoting *Lincoln v. State,* 508 S.W.2d 635, 638 (Tex.Crim.App.1974)); *Grant v. State,* 738 S.W.2d 309, 311 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (quoting *Eckert v. State,* 672 S.W.2d 600, 603 (Tex.App.—Austin 1984, pet. ref'd)); *see also Dues v. State,* 634 S.W.2d 304, 306

(Tex.Crim.App. [Panel Op.] 1982) (prosecutor's improper statement of the law during voir dire which was *never corrected* denied defendant a fair trial). Error in the argument does not lie in going beyond the charge, but lies in stating the law contrary to the same. *Grant,* .738 S.W.2d at 311 (quoting *Mauldin v. State,* 628 S.W.2d 793, 795 (Tex.Crim.App. [Panel Op.] 1982)); *Gillis v. State,* 694 S.W.2d 245, 251 (Tex.App. —Fort Worth 1985, pet. ref'd).

■ To obtain reversal of a judgment based upon an error in the trial court, the appellant bears a two-prong burden. First, he must show that there was, in fact, error. Secondly, he must show that, in light of the record as a whole, there was a reasonable possibility that the argument complained of, if erroneous, might have contributed to his conviction or punishment. *Orona v. State,* 791 S.W.2d 125, 128 (Tex.Crim.App. 1990); *see also McGee,* 774 S.W.2d at 238 (reversible error occurs *only* when statements to the jury are so extreme, manifestly improper, or inject new and harmful facts into the case that they deprive the defendant of a fair and impartial trial); *Grant,* 738 S.W.2d at 311 (reversible error occurs where the remark appears to be clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression from their minds) (quoting *Kelley v. State,* 677 S.W.2d 34, 36 (Tex. Crim.App.1984)); TEX.R.APP.P. 81(b)(2) (an appellate court must reverse unless court determines beyond a reasonable doubt that the error made no contribution to the conviction or the punishment).

■ While we recognize that the prosecutor's statement was, in fact, a misstatement of the law, we cannot conclude that the prosecutor's argument was *so* prejudicial that the court's charge to the jury could not overcome the potential harm sustained by Middlebrook. Despite the State's argument, we find that the jury could not have reached a different result. The trial court clearly enunciated the State's burden of proof during voir dire:

[t]he burden of proof is on the Prosecution. And the State must prove each and every element of the offense alleged beyond a reasonable doubt. If the State fails to prove each element of the offense beyond a reasonable doubt, the Jury has an absolute affirmative duty to acquit and find the Defendant not guilty. If the State proves each element of the offense beyond a reasonable doubt, the Jury has an absolute duty to convict and find the Defendant guilty.

Additionally, the court's charge properly stated that "[i]n all criminal cases, the burden of proof is on the State and the Defendant is presumed to be innocent unless and until the Defendant's guilt is established by legal evidence beyond a reasonable doubt...." Thus, the jury was instructed as to the State's burden of proof both prior to and after the evidence was presented. We conclude that the State's misstatement of the law during voir dire did not mislead the jury as to the State's burden of proof on the issue of Middlebrook's culpable mental state. Middlebrook's fourth point of error is overruled.

The judgment of the trial court is affirmed.