COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-310-CR
  
  
THOMAS BENEDICT                                                              APPELLANT
   
V.
    
THE STATE OF TEXAS                                                                  STATE
  
  
------------
 
FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Thomas Benedict appeals his conviction for misdemeanor driving while intoxicated 
(“DWI”), which was enhanced by a prior DWI conviction. A jury found him 
guilty as charged, and the trial court sentenced him to 365 days’ confinement 
in the Denton County Jail and suspended his driver’s license for 730 days. In 
three points, Appellant challenges the legal and factual sufficiency of the 
evidence to support his conviction, and he asserts that the trial court erred by 
permitting improper jury argument. We will affirm.
I. Legal and Factual Sufficiency
        A.     Evidence 
at Trial
        Around 
11:55 p.m. on May 8, 2002, Carrollton police responded to a call and found 
Appellant asleep at the wheel of his car on Greenway Park Drive. According to a 
police report, a portion of which was read into evidence, a “[r]esident in 
[the] neighborhood called dispatch regarding [a] suspicious vehicle parked in 
[the] roadway for almost two hours with [its] lights on. [The] [v]ehicle was 
stopped in [the] roadway with [its] keys in [the] ignition and in drive. [The] [t]wo 
front tires [were] on rims.”
        Officer 
Mai-Tram Tran, who responded to the call and wrote the report, testified at 
trial that the car was in a lane of traffic up against an island median, the 
engine was running, the car was in gear, the headlights were on, and 
Appellant’s foot was on the brake.  The car was located “straight-on to 
the curb” with two flat front tires, and Officer Tran testified that damage 
she observed on the car’s wheels was consistent with the wheels scraping the 
curb.  In fact, Officer Tran stated that she thought the car had been 
driven on its rims.  Also, Officer Tran stated that it had been raining 
earlier that night; however, she testified that the roadway was dry at the time 
she contacted Appellant.
        After 
several attempts, Officer Tran was able to wake Appellant, and she observed that 
his eyes were red, his speech was slow and slurred, and he seemed 
disoriented.  She instructed him to turn off his engine and get out of his 
car. Without putting the car in park, Appellant turned off the engine. Officer 
Tran also detected a strong odor of alcohol coming from the car, and she found a 
half-empty bottle of vodka in the car. A liquor store receipt found in the car 
showed that the bottle had been purchased earlier that evening around 7:45 p.m. 
Appellant denied drinking vodka in the car, but he admitted to having two beers 
that night.
        Officer 
Nigel Renfro assisted Officer Tran. When given the field sobriety tests, 
Appellant was unable to complete the horizontal nystagmus gaze and one-leg-stand 
tests. Both officers testified at trial that, based on their experience and 
observations of Appellant after finding him in his car, Appellant was 
intoxicated. Consequently, Appellant was arrested and taken to the police 
station, and his car was impounded. Officer Renfro testified that no attempt was 
made to drive Appellant’s car after he got out of it and before it was towed 
away, but he stated that, even with the flat tires, the car “seemed to be 
operating in all respects.”
        While 
in the intoxilyzer room, Appellant stated that he did not know what had happened 
to his car. Officer Tran also testified that, despite Appellant’s admission at 
the site of his arrest to drinking two beers, in the intoxilyzer room, he stated 
that he had only had one beer.  In the intoxilyzer room, Appellant was 
asked to perform the walk-and-turn and one-leg-stand field sobriety tests, and 
he failed these tests because he was unable to complete them.  The officers 
read Appellant his statutory DWI warnings, and Appellant then voluntarily 
submitted to a breath test.  Thirty-seven minutes after his arrest, 
Appellant’s blood-alcohol concentration was .270, more than three times the 
statutory limit of .08. See Tex. 
Penal Code Ann. § 49.01(2)(B) (Vernon 2003).
        In 
addition to the testimony of Officers Tran and Renfro, the State showed the jury 
videotapes from the scene of Appellant’s arrest and the intoxilyzer 
room.  While the tape made from the camera in Officer Tran’s car did not 
have any sound, it showed the position of Appellant’s car at the time of the 
stop. Appellant’s car was stopped in the right lane of the street.  The 
left side of the car was parallel and close to the island median, which divided 
the left and right lanes.  Further up the street, cars were parked along 
the right side of the street.  When the officers approached Appellant’s 
car, his brake lights were lit.
        On 
the tape from the intoxilyzer room, Officer Tran read Appellant his statutory 
DWI and Miranda warnings.  Among other things, the tape shows 
Appellant waive his rights under Miranda and agree to answer Officer 
Tran’s questions.  Appellant admitted that he was driving before he 
stopped. He said he was coming from Coppell[2] and 
going to Harry Hines.  Appellant admitted he had been drinking and stated 
that he had one beer “about [10:00].”
        Appellant 
called his fiancée Carla Hill to testify about the events of May 8, 2002. Hill 
testified that Appellant called her from his cell phone around 10:00 p.m. that 
night for help because ”he had busted up some tires.” Hill stated that she 
drove around looking for Appellant for several hours, but she said that she was 
unable to find him. Hill testified that it was raining that night and that the 
rain was heavy at times. She said the roads were “slippery.” Eventually, 
Hill went home, and she learned the next morning that Appellant had been 
arrested.
        Appellant 
also called his mother Dee Holliday to testify. Dee testified that on May 8, 
2002, she was awakened around 10:00 p.m. when she received a call for assistance 
from Appellant. Dee testified that she understood “there had been an accident 
and there were two flat front tires,” but she told Appellant not to worry 
about it.
        Dee 
testified that she did not try to help Appellant because she did not know where 
he was and because she had just taken some medication in preparation for going 
to bed.  Dee testified that she “wasn’t comprehending the whole 
situation,” but that after she hung up the phone, “it dawned on [her] what 
had been said.” Dee said that she tried to call Appellant back on his cell 
phone twice and could not reach him. Dee unsuccessfully tried to reach Hill and 
then called her daughter.  At some point, Hill called Dee back, and Dee 
learned that Appellant was in jail.
        Appellant 
and Dee went to the impound yard the next morning and attempted to drive the car 
home. Dee described the car as “my vehicle,” but she testified that 
Appellant “drives it.”  While at the impound yard, Appellant did not 
attempt to drive the car.  Dee got in the car and tried to drive it, but 
“could not drive it at all.”  When asked on direct examination, Dee 
agreed that the car was in an “inoperable condition.”  Dee testified 
that she turned the engine on, put the car in drive, applied gas, but it would 
not go forward.  On direct examination, Dee agreed that “no matter what 
[she] tried, the car would not go forward.”  However, when asked on 
cross-examination how much gas she gave the car, Dee testified “not a lot.”
        As 
a result, she asked that the car be moved for her, and it was towed to the front 
of the impound yard. Dee and Appellant attempted to remove the wheels but had to 
call Dee’s husband to come and help them repair the car. Dee agreed on 
redirect examination that after her husband had replaced the “tires and 
rims,” the car was in an “operational condition.”
        Appellant 
called his step-father John Holliday, who testified that Defense Exhibits 9 and 
9A were the left front tire and wheel from the Toyota car Appellant had been 
driving on May 8, 2002. John testified that he went to the Carrollton pound on 
May 9 and took the front tires off of the car. According to John, both tires 
were “unusable” and one of “the wheel[s] was jammed on so tight after you 
took the lug nuts off, I had to go back home and get a big hammer and get under 
there and drive it to get it off.” John put two new tires and a new left wheel 
on the car and then left the impound yard. While John did not drive 
Appellant’s car, he testified that since he had replaced the wheel and tires, 
he had since seen his wife and Appellant driving the car.
        On 
cross-examination, John acknowledged that he was not at the scene of the 
accident on May 8, he did not see the car being towed to or from the impound 
yard until the next morning, and that the car was brought out to the front of 
the impound yard on another wrecker. John also testified that Appellant called 
his house on the night of May 8, but he stated that he did not speak with 
Appellant. John testified that he and his wife lived around three miles from the 
intersection where Appellant’s car was located on May 8, but neither he nor 
his wife went to pick up Appellant. Upon hearing and considering all of the 
evidence presented at trial, a jury found Appellant guilty.
        B.     Legal 
Sufficiency Standard
        In 
his first two points, Appellant complains that the evidence is legally and 
factually insufficient to sustain his conviction for DWI. See Tex. Penal Code Ann. § 49.04(a) (Vernon 
2003). In reviewing the legal sufficiency of the evidence to support a 
conviction, we view all the evidence in the light most favorable to the verdict 
in order to determine whether any rational trier of fact could have found the 
essential elements of the crime beyond a reasonable doubt. Jackson v. 
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 
55 S.W.3d 608, 612 (Tex. Crim. App. 2001). This standard gives full play to the 
responsibility of the trier of fact to resolve conflicts in the testimony, to 
weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. When 
performing a legal sufficiency review, we may not sit as a thirteenth juror, 
re-evaluating the weight and credibility of the evidence and, thus, substituting 
our judgment for that of the fact finder. Dewberry v. State, 4 S.W.3d 
735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).
        C.     Factual 
Sufficiency Standard
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. See 
Zuniga v. State, No. 539-02, 2004 WL 840786, at *4 (Tex. Crim. App. Apr. 21, 
2004). The only question to be answered in a factual sufficiency review is 
whether, considering the evidence in a neutral light, the fact finder was 
rationally justified in finding guilt beyond a reasonable doubt. Id. at 
*7. There are two ways evidence may be factually insufficient: (1) the evidence 
supporting the verdict or judgment, considered by itself, is too weak to support 
the finding of guilt beyond a reasonable doubt; or (2) when there is evidence 
both supporting and contradicting the verdict or judgment, weighing all of the 
evidence, the contrary evidence is so strong that guilt cannot be proven beyond 
a reasonable doubt. Id. “This standard acknowledges that evidence of 
guilt can ‘preponderate’ in favor of conviction but still be insufficient to 
prove the elements of the crime beyond a reasonable doubt.” Id. In 
other words, evidence supporting a guilty finding can outweigh the contrary 
proof but still be insufficient to prove the elements of an offense beyond a 
reasonable doubt. Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses. Id. at *4; Cain v. State, 958 S.W.2d 
404, 407 (Tex. Crim. App. 1997). We may not substitute our judgment for that of 
the fact finder’s. Zuniga, 2004 WL 840786, at *4.
        A 
proper factual sufficiency review requires an examination of all the evidence. Id. 
at *7, 9. An opinion addressing factual sufficiency must include a discussion of 
the most important and relevant evidence that supports the appellant’s 
complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 
2003).
        D.     Application 
of Law to Facts
        “A 
person commits an offense if the person is intoxicated while operating a motor 
vehicle in a public place.” See Tex. 
Penal Code Ann. § 49.04(a). In challenging the legal and factual 
sufficiency of the evidence to support his conviction, Appellant does not 
dispute that he was intoxicated at the time the officers found him in his car. 
Rather, Appellant argues that, from the totality of the circumstances, the 
evidence is not legally or factually sufficient to establish that he operated 
the car while in the presence of the police or that, prior to the officers’ 
arrival, he was intoxicated while operating his car. See id. We disagree.
        There 
is no statutory definition of “operate,” but the Texas Court of Criminal 
Appeals has held, “[t]o find operation under [the DWI] standard, the totality 
of the circumstances must demonstrate that the defendant took action to affect 
the functioning of [the] vehicle in a manner that would enable the vehicle’s 
use.” Denton v. State, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995). In Denton, 
the court also noted that, “while driving does involve operation, operation 
does not necessarily involve driving.” Id. at 389; see also Barton 
v. State, 882 S.W.2d 456, 459 (Tex. App.—Dallas 1994, no pet.) (refusing 
to accept the contention that to operate a vehicle within the meaning of the 
statute, the driver’s personal effort must cause the automobile to either move 
or not move).
        Appellant 
points to Ballard v. State, 757 S.W.2d 389, 391 (Tex. App.—Houston [1st 
Dist.] 1988, pet. ref’d) and Reddie v. State, 736 S.W.2d 923, 927 (Tex. 
App.—San Antonio 1987, pet. ref’d), where the evidence was found to be 
insufficient to show “operation,” contending they are similar to this case. 
However, we decline to follow these cases because of their limited pre-Geesa 
value.[3]
        Both 
Appellant and the State discuss numerous cases concerning challenges to the 
legal and factual sufficiency of the evidence on the issue of operating a 
vehicle while intoxicated, but we agree with the Austin Court of Appeals’s 
observations that “no two cases are factually identical and that the 
sufficiency of the evidence must be determined on a case-by-case basis.” Pope 
v. State, 802 S.W.2d 418, 420 n.1 (Tex. App.—Austin 1991, no pet.).  
Upon our review of the record, we conclude that the State proved with legally 
and factually sufficient evidence that Appellant was operating his vehicle while 
intoxicated at the time the police arrived.
        In 
this case, the police came upon Appellant’s car as he was sitting in the 
driver’s seat of the car his mother allowed him to drive, asleep, with the 
engine running, the car in gear, the headlights on, and his foot on the brake. 
The car was in a lane of traffic, in a residential area, with two flat tires, 
and had been there for close to two hours.  When instructed, Appellant 
turned his engine off without putting the car in park. Officer Tran testified 
that she thought the vehicle had been driven on its rims, and Officer Renfro 
testified that Appellant’s car “seemed to be operating in all 
respects.”  We conclude that the evidence, when viewed in the light most 
favorable to the verdict, indicates that Appellant, while intoxicated, exerted 
personal effort upon his car to affect its functioning in a manner that would 
enable the car’s use. See Denton, 911 S.W.2d at 390; see, e.g., 
Hearne v. State, 80 S.W.3d 677, 679-81 (Tex. App.—Houston [1st 
Dist.] 2002, no pet.) (holding evidence of operation legally and factually 
sufficient where truck was in moving lane of traffic on service road to highway, 
with engine running, gearshift “in park,” driver was alone and asleep in the 
driver’s seat, driver was not touching the accelerator or brake, officer did 
not know how long truck had been there, and driver stipulated that the “events 
in this case occurred while I was legally intoxicated”); Freeman v. State, 
69 S.W.3d 374, 375 (Tex. App.—Dallas 2002, no pet.) (holding evidence of 
operation legally and factually sufficient where SUV’s motor was running, 
gearshift was in the “drive position,” lights were on, right front tire was 
resting against a curb of a public street, driver was asleep at the wheel); see 
also Garver v. State, No. 05-01-01032-CR, 2002 WL 1133019, at *3 (Tex. 
App.—Dallas May 31, 2002, pet. ref’d untimely filed) (not designated for 
publication)[4] (stating that turning car’s engine 
off “was just as much exerting personal effort to control a vehicle to affect 
its functioning as starting an engine and revving the motor or putting a car in 
gear”).  Thus, the evidence is legally sufficient to show that Appellant 
was operating his car while intoxicated.  Appellant’s first point is 
overruled.
        On 
Appellant’s factual insufficiency challenge, Appellant directs us to his 
mother’s testimony that the car could not be driven and to the fact that the 
police did not attempt to drive the car. He argues that, because of the evidence 
suggesting that the car was unable to be driven, it cannot be concluded that he 
was operating what was in effect an inoperable car at the time the police 
arrived. The evidence is conflicting as to whether the car could have been 
driven. Officer Renfro testified that the car was “definitely driveable,” 
and Officer Tran stated that she thought the car could have been driven on its 
rims.  As the factfinder in this case, the jury judged the credibility of 
the witnesses and could have “believe[d] all, some, or none of the 
testimony.”  See Chambers v. State, 805 S.W.2d 459, 461 
(Tex. Crim. App. 1991); Penagraph v. State, 623 S.W.2d 341, 343 (Tex. 
Crim. App. [Panel Op.] 1981).
        Further,
[a] 
factual sufficiency analysis can consider only those few matters bearing on 
credibility that can be fully determined from a cold appellate record. Such an 
approach occasionally permits some credibility assessment but usually requires 
deference to the jury’s conclusion based on matters beyond the scope of the 
appellate court’s legitimate concern. Unless the available record clearly 
reveals a different result is appropriate, an appellate court must defer to the 
jury’s determination concerning what weight to give contradictory testimonial 
evidence because resolution often turns on an evaluation of credibility and 
demeanor, and those jurors were in attendance when the testimony was delivered.
 
 
Johnson v. State, 
23 S.W.3d 1, 8 (Tex. Crim. App. 2000) (citation omitted). In this case, the 
jury, as the factfinder, determined the weight and credibility to be given to 
each witness’s testimony and ultimately found that Appellant operated his car 
while intoxicated. See id. at 7. Because the available record does not 
clearly reveal that a different result is appropriate, we must defer to the 
jury’s determination. See id.
        Moreover, 
even if the car could not be driven because of damages to the front tires, as we 
observe above, the court of criminal appeals in Denton has rejected the 
argument that a vehicle is not operated when it is not actually moved. Denton, 
911 S.W.2d at 389-90. In fact, the court upheld a defendant’s conviction for 
unauthorized use of a motor vehicle, concluding that he had operated a pickup 
truck “by starting the ignition and revving the accelerator,” even though 
the truck would not move, having not had sufficient time to warm up. Id. 
at 388, 390.  As such, the State did not have to prove that Appellant drove 
or operated a fully-functional car.  See id.; Barton, 882 
S.W.2d at 459; see also Edwards v. State, No. 03-02-00373-CR, 2003 WL 
22248850, at *1-2 (Tex. App.—Austin Oct. 2, 2003, no pet.) (mem. op.) (not 
designated for publication) (holding defendant operated car by shifting from 
forward to reverse and spinning the car’s wheels, even though he was unable to 
dislodge it from a pile of dirt on the side of the road). Instead, the State 
only had to prove that Appellant operated his car. See Tex. Penal Code Ann. § 49.04(a).
        Upon 
reviewing the evidence under the applicable standard of review, giving due 
deference to the factfinder’s determinations, we conclude that the evidence 
presented at trial is factually sufficient to establish beyond a reasonable 
doubt that Appellant operated his car while intoxicated. See Zuniga, 
2004 WL 840786, at *4, 7, 9; Denton, 911 S.W.2d at 390; Hearne, 80 
S.W.3d at 679-81; Freeman, 69 S.W.3d at 375. Accordingly, Appellant’s 
second point is overruled.
II. Jury Argument
        In 
his third point, Appellant argues that the trial court erred by permitting 
improper closing argument that contained a misstatement of law or was contrary 
to the court’s jury charge. Appellant challenges the following portion of the 
State’s closing argument:
 
[STATE]: 
You’ve heard all the evidence in this case. The law states that if someone is 
in a vehicle, the engine is running, person with their foot on the brake -- even 
if they don’t have their foot on the brake --
 
[DEFENSE 
COUNSEL]: I’m going to object, Your Honor. This is not the law in this case. 
There’s no such law in the charge.
 
[STATE]: 
That is what the case law states, Your Honor.
 
THE 
COURT: And I’ll -- what I’m going to tell you is, you can argue that is a 
reasonable summation of the evidence. It’s not in the Court’s charge, and so 
I’m going to tell you, you can’t tell them that’s exactly what the law is. 
You can argue that it is a reasonable summation of the evidence. To that extent, 
I’m overruling your objection, [Defense Counsel], and you can have a running 
objection to it.
 
[DEFENSE 
COUNSEL]: But to keep saying this is law, this is law, what is introduced into 
evidence, I have no problem --
 
[STATE]: 
Your Honor, speaking objections.
 
THE 
COURT: Okay. Do we need to take a break so you can get your objection on the 
record?
 
DEFENSE 
COUNSEL]: No. I just want to make it clear.
 
THE 
COURT: Okay. The point is, the law, as far as the jury’s concerned, is what 
I’ve got in the charge. So don’t tell them anything else, other than that. I 
mean, you can make your arguments, but I’m just telling you, you can’t state 
as specific what the law is, other than what’s in the charge.
 
[STATE]: 
The reason for this is there’s no definition in the charge for drove, 
there’s no definition in your charge for operating, but it is drove or 
operating a motor vehicle.
 
Operated. 
We were asked in voir dire -- we asked all you folks, what does it mean to 
operate. And I think some of you, maybe not you people who are sitting here, but 
some of the people said engine running, foot on the brake. That’s what 
operated means to us. Common sense. That’s what operated is. The car could 
have lurched forward. What about when the officer was standing in front of the 
car flashing their light? What if he had snapped awake then?
 
THE 
COURT: Seven minutes now.
 
[STATE]: 
That is what the elements of the offense are, ladies and gentlemen, and that is 
what the Defendant did that night. He operated a motor vehicle, not just while 
intoxicated but while he was drunk. Do not let him escape responsibility. Do not 
let defense counsel come up here and tell you that that’s not the law, because 
it is. Operated. Thank you.
  
 
        Appellant 
first contends that the State gave the jury an incorrect definition of 
“operation” during voir dire, a problem which was compounded by the 
State’s closing argument. As the State points out, however, Appellant did not 
object during voir dire to the alleged misstatement of the law. It is well 
settled that the failure to object to statements made during voir dire forfeits 
the right to complain about them on appeal.  Tex. R. App. P. 33.1(a)(1); Draughon 
v. State, 831 S.W.2d 331, 336-37 (Tex. Crim. App. 1992), cert. denied, 
509 U.S. 926 (1993); Jenkins v. State, 870 S.W.2d 626, 629 (Tex. 
App.—Houston [1st Dist.] 1994 pet. ref’d), cert. denied, 
516 U.S. 1080 (1996). Therefore, Appellant has waived his right to complain of 
any error occurring during voir dire as to the trial court allowing the State to 
misstate the law.
        Appellant 
next asserts that the trial court erred in overruling his objection to the 
State’s closing argument because the State misstated the law and argued 
contrary to the law contained in the charge. In response to Appellant’s 
complaint on appeal, the State argues that its closing argument was a proper 
summation of the evidence, made with reasonable deductions from the evidence, 
contained no misstatements of law, and was not contrary to the jury charge. To 
be permissible, the State’s jury argument must fall within one of the 
following four general areas: (1) summation of the evidence; (2) reasonable 
deduction from the evidence; (3) answer to argument of opposing counsel; or (4) 
plea for law enforcement. Felder v. State, 848 S.W.2d 85, 94-95 (Tex. 
Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. 
State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).
        It 
is improper to argue contrary to the law contained in the jury charge; however, 
merely going beyond the language of the charge is not erroneous. State v. 
Renteria, 977 S.W.2d 606, 608 (Tex. Crim. App. 1998) (“[T]here is no error 
in correctly arguing the law, even if the law is not included in the court’s 
charge.”). Furthermore, the law is well-settled that a party does not 
improperly argue during jury argument by making arguments based on legal 
principles not contained in the court’s charge.  Id.; Middlebrook v. 
State, 803 S.W.2d 355, 360-61 (Tex. App.—Fort Worth 1990, pet. ref’d); Gillis 
v. State, 694 S.W.2d 245, 251 (Tex. App.—Fort Worth 1985, pet. ref’d).  
Each side is permitted to discuss the facts admitted into evidence “and to 
give a reasonable explanation of the law applicable to that case.”  Provost 
v. State, 631 S.W.2d 173, 176 (Tex. App.—Houston [1st Dist.] 
1981, pet. ref’d). Legal concepts may be explained as long as such examples do 
not constitute statements of the law contrary to that contained in the charge. Id.; 
Givens v. State, 554 S.W.2d 199, 201 (Tex. Crim. App. 1977).
        When 
viewed in context, the State’s argument consisted of a summation of the facts 
in evidence concerning whether Appellant operated his car and an argument that 
his actions constituted operation under the law. Because the State’s argument 
was not a misstatement of the law or contrary to the charge, we conclude that 
the trial court did not err in overruling Appellant’s objection to this 
portion of the State’s closing argument. Accordingly, Appellant’s third 
point is overruled.
III. Conclusion
        Having 
overruled Appellant’s three points, we affirm the trial court’s judgment.
   
   
                                                          ANNE 
GARDNER
                                                          JUSTICE
    
 
PANEL B:   HOLMAN, 
GARDNER, and WALKER, JJ.
 
DO NOT PUBLISH
Tex. R. 
App. P. 47.2(b)
 
DELIVERED: September 23, 2004


NOTES
1.  See 
Tex. R. App. P. 47.4.
2.  
Appellant first stated that he was coming from Carrollton, but then stated that 
he was coming from Coppell.
3.  
In these cases the reviewing courts were required to apply the reasonable 
hypothesis of guilt analytical construct.  See Geesa v. State, 820 
S.W.2d 154, 158 (Tex. Crim. App. 1991), overruled in part on other grounds, 
Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000).  In other 
words, as to a conviction based on circumstantial evidence, the State had to 
exclude all reasonable hypotheses, other than the defendant’s guilt, in order 
for the evidence to be legally sufficient on appeal.  Id. at 
161.  The reasonable hypothesis analytical construct was overturned in Geesa 
and no longer binds this court. Id.  Thus Appellant’s cited pre-Geesa 
authorities are “not controlling and are of limited value.”  Barton, 
882 S.W.2d at 458-59; Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 
1999).
4.  See 
Tex. R. App. P. 47.7 (providing 
that unpublished cases may be cited, although they have no precedential value).