Opinion issued November 10, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00217-CR

———————————

Julio Cesar Carrasquillo, Appellant

V.

State of
Texas, Appellee



 



 

On Appeal from the 176th District Court

Harris County, Texas



Trial Court Case No. 1242807

 



 

MEMORANDUM OPINION

A jury convicted Julio
Cesar Carrasquillo of the felony offense of unauthorized use of a motor
vehicle.  See Tex. Penal Code Ann
§ 31.07(a) (West 2009). 
Carrasquillo pleaded true to two enhancements paragraphs, and the trial
court assessed punishment at ten years’ confinement and a $10,000 fine.  On appeal, Carrasquillo contends that (1) he
received ineffective assistance of counsel in violation of his constitutional
rights, as recognized in Strickland v.
Washington; and (2) the evidence is insufficient to support his conviction.  We hold that the Carrasquillo failed to meet
his Strickland burden to demonstrate
that his trial counsel performed deficiently and that sufficient evidence
supports his conviction.  We therefore
affirm.

Background

One evening in November of 2009, Alicia Elliott went alone to a club
near downtown Houston.  She drove her
1999 Chevrolet Tahoe and parked it on a side street.  Unsure about whether she was permitted to
park there, she confirmed with a bystander that it would not be a problem.   Elliott laced her car key through one of her
shoelaces and tied it tightly to her shoe. 
She left her wallet and other valuables inside the car and entered the
club.  After some time at the club, she
decided that she had too much to drink and decided not to drive.  Instead, she rode with some acquaintances to
their home.  Elliott still had her car
key attached to her shoe. 

The next day, she went to retrieve the Tahoe and discovered it was
missing.  Elliott saw broken glass where
her truck had been.  A bystander told
Elliott that someone had broken into her truck and that it had been towed.  Elliott searched nearby impound lots without
success.  She did not file a missing
vehicle police report. 

A few days later, Officer T. Morgan of the Humble Police Department
observed a paper fly out of the front passenger-side window of a passing truck.
 Because he already had someone in
custody in his patrol car, Officer Morgan called for another officer to stop
the truck and cite the passenger for littering. 
While waiting for backup, Officer Morgan ran a search of the truck’s
license plates through the dashboard computer, and discovered that they were
unregistered Kansas plates.  

Officer W. Domilos responded to Officer Morgan’s call.  When Officer Domilos saw a truck meeting
Morgan’s description, Domilos switched on his emergency lights and dashboard
camera.  The truck exited the freeway,
and the driver pulled into a parking lot of a nearby go-cart track.  As Officer Domilos approached the passenger
side of the vehicle, the passenger bolted from the truck and ran away.  Officer Domilos called for assistance.  When Officer Morgan heard the call on his radio,
he responded.  Officer K. Love also responded
to the call.  Officer Domilos ran after
the passenger, but quickly realized he would not be able to catch him.  Officer Domilos turned back toward the truck
and yelled for the driver to stay there until he returned.  At that point, the driver also fled the
truck, running in the opposite direction from the passenger.  Officer Domilos began to run after the
driver. He saw the driver jump from a fifteen-foot embankment into the bayou.  Officer Domilos ran up to the edge of the
embankment and saw the driver in the water. 

Officer Domilos, still on the radio with Officer Morgan, described the
driver’s location, the direction he was headed, and his appearance.  Based on that information, Officer Morgan
went to the other side of the bayou to look for the driver.  While Officer Morgan still had Officer Domilos
on the radio, some bystanders pointed out a dripping‑wet man to Officer
Morgan.  Officer Morgan noted that the
man was breathless and wore clothing that matched Officer Domilos’ description.
 Officer Domilos watched from the other
side of the bayou as Officer Morgan arrested the driver, later identified as
Julio Cesar Carrasquillo. 

Meanwhile, Officer Domilos returned to the abandoned truck.  He saw that the front passenger window had
been smashed in, and noticed blood inside. 
He also noted that the key in the ignition was “completely worn, like it
would just fit into . . . any tumbler, and it was not the proper key for the
vehicle.”  Officer Love took fingerprint
samples from the truck.  He noted that
the front passenger window had been smashed and saw a pool of blood on the
center console.  Office Love also found
business cards with Alicia Elliott’s name on them.  He called Elliott and asked her about the truck.  After she responded that she did not know
where the truck was, Officer Love reported the events of the day.  The police impounded the truck with the worn
key still inside, but it was later lost.  After Elliott recovered the truck, she
discovered that her tools, CD player, and other valuables were missing.  Elliott denied knowing Carrasquillo or giving
anyone permission to use her vehicle. 

Discussion

I.         Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, the defendant
must show that (1) his counsel’s performance was deficient, and (2) a
reasonable probability exists that the result of the proceeding would have been
different.  Strickland v. Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  The first prong requires the defendant to
show that counsel’s performance fell below an objective standard of
reasonableness.  Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  Thus, the defendant must prove objectively,
by a preponderance of the evidence, that his counsel’s representation fell
below professional standards.  Mitchell v. State, 68 S.W.3d 640, 642
(Tex. Crim. App. 2002).  The second prong
requires the defendant to show a reasonable probability that, but for counsel’s
unprofessional errors, the result of the proceeding would have been
different.  See Strickland, 466 U.S. at 694, 104
S. Ct. at 2068; see also Thompson, 9
S.W.3d at 812.  In reviewing counsel’s
performance, we look to the totality of the representation to determine the
effectiveness of counsel, indulging a strong presumption that the attorney’s
performance falls within the wide range of reasonable professional assistance
or trial strategy.  Thompson, 9 S.W.3d at 813. 
Furthermore, a claim of ineffective assistance must be firmly supported
in the record.  Id.  Where the record does
not offer an explanation for trial counsel’s actions, we presume that counsel
made all significant decisions in the exercise of reasonable professional
judgment.  Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Broussard v. State, 68 S.W.3d 197, 199
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).

A.      Failure to object to hearsay

Carrasquillo first claims that his
trial counsel was deficient in failing to object to Officer Morgan’s hearsay
testimony. Officer Morgan told the jury that anonymous bystanders verbally had identified
Carrasquillo to him as the man fleeing from the bayou. Carrasquillo contends
that these bystander identifications are inadmissible hearsay, and it thus was deficient
for defense counsel to fail to object to them.

Carrasquillo did not allege
ineffective assistance in a motion for new trial, so his trial counsel had no
opportunity to explain the complained-of conduct.  Although a motion for new trial is not a prerequisite
to a successful ineffective assistance of counsel claim, evidence presented at
a motion for new trial hearing may offer insight into defense counsel’s motives
behind his actions and may rebut the strong presumption of reasonable
professional assistance.  Edwards v. State, 280 S.W.3d 441, 443
(Tex. App.—Fort Worth 2009, pet. ref’d).  Trial counsel’s closing argument, however, reveals
a possible trial strategy.  Counsel told
the jury that “[n]obody is arguing that Julio Carrasquillo was driving that
vehicle,” and that he would not “talk down” to them by denying identity, but instead,
would focus solely on the issue of whether he had consent to drive it.  

The Court of Criminal Appeals has held that an “undoubtedly risky”
trial strategy that ultimately does not pay off is not necessarily unacceptable
or “wholly unjustified.”  See Delrio v. State, 840 S.W.2d 443,
446–47 (Tex. Crim. App. 1992) (per curiam); see
also Heiman v. State, 923 S.W.2d 622, 626–27 (Tex. App.—Houston [1st Dist.]
1995, pet. ref’d) (holding that counsel was not ineffective for failing to
object to evidence of extraneous offenses because record reflected plausible
trial strategy to refrain).  Here, trial
counsel could have chosen not to contest the issue of identity to lend credit to
Carrasquillo’s claim of consent.  The
decision not to object to hearsay evidence that tended to show identity was consistent
with this strategy; a challenge to that evidence would have undermined it.  Other non-hearsay evidence of identity
existed in the Officer Domilos’ testimony concerning his radio communication
with Officer Morgan, Officer Morgan’s first-hand testimony, and in a video of
Carrasquillo exiting the driver’s seat.  Based
on the record and the strong presumption that counsel’s performance falls
within the wide range of reasonable trial strategy, we hold that Carrasquillo
has not satisfied his burden to show that counsel’s assistance fell below
reasonably professional standards.

B.        Confrontation Clause violation

Carrasquillo next complains that he
was deprived of his right of confrontation under the United States and Texas
Constitutions when his trial counsel failed to object to statements made by
unidentified bystanders who saw Carrasquillo’s flight and arrest.  See
U.S. Const. amend. VI; Tex. Const. art. I, § 10.  The Federal Confrontation Clause declares: “In
all criminal prosecutions, the accused shall enjoy the right . . . to be
confronted with the witnesses against him.” 
U.S. Const. amend. VI.  In Crawford
v. Washington, the United States Supreme Court held that the clause bars
the admission of testimonial statements made by a witness not present at trial
and not subject to cross-examination when the witness is available.  541 U.S. 36, 53–54, 124 S. Ct. 1354, 1365–66
(2004).  

The Court has since made clear that
this limitation applies only to testimonial statements.  See
Davis v. Washington, 547 U.S. 813, 821, 126 S. Ct. 2266, 2273 (2006).  “Statements are nontestimonial when made in
the course of police interrogation under circumstances objectively indicating
that the primary purpose of the interrogation is to enable police assistance to
meet an ongoing emergency.”  Id. at 822.  Whether a statement is testimonial or
nontestimonial depends on the surrounding circumstances.  See
Michigan v. Bryant, 131 S. Ct. 1143, 1147 (2011).  The determination hinges on the “primary
purpose” of the interrogation eliciting the statement.  Id.  The formality with which statements are made
and the necessity of those statements to resolve an ongoing emergency are also
significant factors in determining whether a statement is testimonial.  Id.


Here, the officers were in pursuit
of the fleeing driver when Officer Morgan asked the bystanders about whether
they had seen a person meeting Carrasquillo’s description.  They quickly responded to Officer Morgan’s
question, and he continued his pursuit.  The
informal nature of their exchanges —
à la “Which way did
he go?”—suggests
that the bystander’s responses were necessary to the hot pursuit of a suspect, not
a reflective recollection of events to build a court case.  See id.
(holding that dying man’s descriptions of shooter and shooter’s locations were
made to meet an ongoing emergency).  We
hold that the statements Carrasquillo complains of are not testimonial in
nature and thus, their admission did not violate Carrasquillo’s rights under
the Confrontation Clause.  See id. at 1167.   Counsel’s failure to object to them on this
ground is not a basis to find ineffective assistance.

C.      Failure to
investigate or call witnesses

Carrasquillo challenges his trial
attorney’s failure to locate the bystanders and call them as witnesses.  In the context of a claim of ineffective
assistance, a criminal defense lawyer has a duty to make an independent
investigation of the facts of a case, which includes seeking out and
interviewing potential witnesses.  Brennan v. State, 334 S.W.3d 64, 71
(Tex. App.—Dallas 2009, no pet.).  “[A]
particular decision by counsel not to investigate must be directly assessed for
reasonableness in all the circumstances, applying a heavy measure of deference
to counsel’s judgments.”  Id. (quoting Wiggins v. Smith, 539 U.S. 510, 521–22, 123 S. Ct. 2527, 2535
(2003)).  A claim of ineffective
assistance of counsel based on counsel’s failure to call witnesses fails in the
absence of a showing that the witnesses were available to testify and that the
defendant would have benefitted from their testimony.  Ex parte
White, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004).  

The record does not reveal whether
defense counsel conducted any independent investigation.  See
Passmore v. State, 617 S.W.2d 682, 685 (Tex. Crim. App. [Panel Op.] 1981), overruled on other grounds by Reed v. State, 744 S.W.2d 112 (Tex.
Crim. App. 1988)).  Nothing shows that it
would have been possible to secure the evidence that Carrasquillo contends
could be discovered.  Id.  Nor does the record show whether that evidence
would benefit Carrasquillo; the jury saw video footage from the patrol car’s
dashboard camera showing Carrasquillo exiting the car from the driver’s seat.  See
Henderson v. State, 704 S.W.2d 536, 537–38 (Tex. App.—Houston [14th Dist.]
1986, pet. ref’d).  In light of the
reasonable trial strategy of stipulating to identity and focusing solely on the
consent issue, counsel may have decided that the bystanders’ testimony would
not have strengthened the case.  The
absence of the bystander witnesses, standing alone, does not show ineffective
assistance of counsel.  See id.

D.  Improper jury argument

Carrasquillo claims that trial
counsel rendered ineffective assistance by failing to object to the
prosecutor’s improper argument during closing argument.  The prosecutor referred to the unnamed
witnesses who had identified Carrasquillo as saying, “That’s him.  That’s the guy.”  In the other, the prosecutor described the
key used in the car as “shaved,” as opposed to “worn.”  With respect to the first statement, defense
counsel’s failure to object was consistent with the reasonable trial strategy
of showing consent to use the vehicle and not to question identity.  In contrast, the prosecutor’s claim that the
key was “shaved,” is inconsistent with a consent defense.  To show ineffective assistance of counsel for
failure to object, however, the defendant also must show that the trial court
would have erred in overruling the objection.  Vaughn
v. State, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). 

Proper jury argument generally falls
into one of the following areas: (1) summation of the evidence presented at
trial; (2) a reasonable deduction drawn from that evidence; (3) an answer to
the opposing counsel’s argument; or (4) a plea for law enforcement.  Guidry
v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999).  To determine whether an argument falls into
one of these permissible categories, we consider the argument in the context of
the entire record.  Klock v. State, 177 S.W.3d 53, 64 (Tex. App.—Houston [1st Dist.]
2005, pet. ref’d).  Carrasquillo states
that the prosecutor, not Officer Domilos, described the key as shaved, and that
Officer Domilos described it only as worn. 
The pertinent testimony follows:

Q.        And you also said something about a
shaved key, correct?

A.        Yes, the key.  Shaved, super worn.  Just like our patrol car keys, these fit in
all our vehicles because they’re cut to a certain way where they’ll touch all
the tumblers in a sequence to where all our . . . vehicles will open
with this.  It’s also possible to do that
with other [non-police] vehicles.”  

Q.        That’s not typical for your average
civilian vehicle, correct?

A.        Correct.

Officer Domilos also testified that the key was not
the proper one for the vehicle, and that the average civilian would not possess
a key that was worn to the level of the key found in the vehicle.  

The trial court would not have
abused its discretion in overruling any defense objection to improper argument
because the prosecutor fairly summarized Officer Domilos’s testimony.  Further, Carrasquillo’s trial counsel
specifically responded to the discrepancy during the defense closing:

There is a key that is in
the ignition. There’s a key that the officer says that it was already in the
vehicle itself. Now, the prosecution tried to portray it as a shaved key. The
officer said “I didn’t call it a shaved key. I said that it was a worn key”
that could possibly start up any vehicle itself.

 . . . .

And if it is so
important that this is a shaved key or a worn-down key, isn’t it important to
have at least photographed the . . . key so that we can have brought that into
evidence?

We will not second-guess defense counsel’s strategic
decision to thoroughly confront the discrepancy in rebuttal instead of objecting
during the prosecutor’s closing.  We hold
that Carrasquillo has not met his burden to show that counsel’s failure to
object to the prosecutor’s use of the term “shaved” was unreasonable under Strickland.

II.        Evidentiary sufficiency

            A.        Standard of review

This Court reviews legal and factual
sufficiency challenges using the
same standard of review.  Ervin v.
State, 331 S.W.3d 49, 54
(Tex. App.—Houston [1st Dist.] 2010, pet. ref’d) (construing holding of Brooks
v. State, 323 S.W.3d 893, 912,
926 (Tex. Crim. App. 2010)); see also
Griego v. State, 337 S.W.3d 902, 903 (Tex. Crim. App. 2011).  Under this standard, evidence is insufficient
to support a conviction if, considering all the record evidence in the light
most favorable to the verdict, no rational fact finder could have found each
essential element of the charged offense proven beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,
2789 (1979); In re Winship,
397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim.
App. 2009); Williams v. State,
235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  Viewed in the light most favorable to the
verdict, the evidence is insufficient under this standard in two circumstances:
(1) the record contains no evidence, or merely a “modicum” of evidence,
probative of an element of the offense; or (2) the evidence conclusively
establishes a reasonable doubt.  See
Jackson, 443 U.S. at 314,
318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11; Laster, 275 S.W.3d at 518; Williams, 235 S.W.3d at 750.  Additionally, the evidence is insufficient if
the acts alleged do not constitute the criminal offense charged.  Williams, 235 S.W.3d at 750.

An appellate court determines
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.  Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007) (citing Hooper v. State,
214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)).  We treat direct and circumstantial evidence as
equally probative; circumstantial evidence alone can be sufficient to establish
guilt.  Id.  An appellate court presumes that the fact finder
resolved any conflicting inferences in favor of the verdict and defers to that
resolution.  See Jackson, 443 U.S. at 326, 99 S. Ct. at 2793;
Clayton, 235 S.W.3d at
778.  An appellate court also defers to
the fact finder’s evaluation of the evidence’s credibility and weight.  See Williams, 235 S.W.3d at 750.

            B.        Analysis

A person commits unauthorized use of
a motor vehicle if he “intentionally or knowingly operates another’s . . .
motor-propelled vehicle without the effective consent of the owner.”  Tex.
Penal Code Ann. § 31.07(a) (West 2003).  An officer’s testimony that a defendant exited
the driver’s side of a vehicle is sufficient to prove intentional or knowing
operation.  Duenez v. State, 735 S.W.2d 563, 566 (Tex. App.—Houston [14th
Dist.] 1987, pet. ref’d).  Evidence that
the driver fled from the stopped vehicle supports a reasonable inference of
unauthorized use.  See Middlebrook v. State, 803 S.W.2d 355, 360 (Tex. App.—Fort Worth
1990, pet. ref’d).  Further, the complainant’s
testimony alone is enough to prove lack of consent.  Battise
v. State, 264 S.W.3d 222, 227 (Tex. App.—Houston [1st Dist.] 2008, pet.
ref’d).

Carrasquillo contends that his
possession of the key to Elliott’s motor vehicle equates to actual or implied consent
to its use.  Texas law does not bear out
this contention.  See Caro v. State, 771 S.W.2d 610, 612 (Tex. App.—Dallas 1989, no
pet.) (holding that evidence was sufficient to support conviction where
defendant possessed keys to vehicle, but complainant testified to lack of
consent); Smith v. State, 785 S.W.2d
174, 174–75 (Tex. App.—Houston [14th Dist.] 1990, no pet.) (holding that evidence
was sufficient to show lack of consent despite keys found in ignition). 

Elliott testified that she did not
know Carrasquillo and did not give him consent to use her truck.  She also testified that when she left the
truck, its windows were unbroken and it had a CD player.  The officers testified that when they
inspected the truck, the front passenger-side window was broken and it did not
have a CD player.  They also both
testified to finding a “worn” key, broken passenger window, and blood in the
car.  Officer Domilos testified that the
key was worn, that it was “not the proper key for the vehicle,” and that it was
not a typical civilian key.  Carrasquillo
and an unidentified passenger both fled from the vehicle after Officer Domilos
pulled it over.  We hold that this
evidence is sufficient to show that Carrasquillo operated the vehicle knowing
he lacked its owner’s consent.  See Dickson
v. State, 642 S.W.2d 185, 189 (Tex. App.—Houston [14th Dist.] 1982, pet.
ref’d) (holding that evidence was sufficient to support conviction for
unauthorized operation of motor vehicle where defendant was seen exiting
vehicle shortly after stopping and owner of vehicle testified that he had not
consented to its use).  

Conclusion

            We hold that Carrasquillo failed
to establish that his trial counsel’s performance constituted ineffective
assistance under Strickland.  We further hold that the evidence was legally
and factually sufficient to uphold Carrasquillo’s conviction of unauthorized
use of a motor vehicle.  We therefore
affirm the judgment of the trial court.

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Bland and Huddle.

Do
not publish.   Tex. R. App. P. 47.2(b).